| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| LAW OFFICES OF LES ZIEVE<br>BRIAN H. TRAN, ESQ. #255577<br>LESLIE M. KLOTT, ESQ. #279622<br>30 Corporate Park, Suite 450<br>Irvine, CA 92606<br>Phone: (714) 848-7920<br>Facsimile: (714) 908-7807<br>Email: bankruptcy@zievelaw.com<br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION

| In re:<br><br>Robert Lifson and Toni Lee Black<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.:  2:13-bk-28666-VZ<br>CHAPTER:  13<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)**<br><br>DATE: November 24, 2015<br>TIME: 9:30 a.m.<br>COURTROOM: 1368 |
|---|---|

**Movant:** Deutsche Bank National Trust Company, solely as Trustee for MASTR Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates, Series 2006-3, by Ocwen Loan Servicing, LLC, as servicer

1. **Hearing Location**:

☒ 255 East Temple Street, Los Angeles, CA 90012
☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367
☐ 3420 Twelfth Street, Riverside, CA 92501

☐ 411 West Fourth Street, Santa Ana, CA 92701
☐ 1415 State Street, Santa Barbara, CA 93101

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a.  ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b.  ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c.  ☐ An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.


Date: 10/28/2015

Law Offices of Les Zieve
_____
Printed name of law firm (if applicable)

Leslie M. Klott
_____
Printed name of individual Movant or attorney for Movant

/s/ Leslie M. Klott
_____
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                        Page 2                                        **F 4001-1.RFS.RP.MOTION**

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

    ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

    ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

    ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

    ☒ Other (*specify*): Movant is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan.  Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed in blank.

2. **The Property at Issue (Property):**

    a. Address:

    *Street address*:  5148 Frazier Mountain Park Rd
    *Unit/suite number*:
    *City, state, zip code*:  Frazier Park, CA 93225-9723

    b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit ___2___):

3. **Bankruptcy Case History:**

    a. A  ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☐ 11  ☐ 12  ☒ 13
    was filed on (*date*)  7/23/2013   .

    b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

    c. ☒ A plan, if any, was confirmed on (*date*)  05/21/2014  .

4. **Grounds for Relief from Stay**:

    a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

    (1) ☐ Movant's interest in the Property is not adequately protected.

        (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

        (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

        (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

    (2) ☐ The bankruptcy case was filed in bad faith.

        (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

        (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

        (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

        (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

        (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

        (F) ☐ Other (*see attached continuation page*).

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☒ (*Chapter 12 or 13 cases only*)

(A) ☐ All payments on account of the Property are being made through the plan.
☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

(B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____,
which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

(1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

(2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):


6. **Evidence in Support of Motion: (D***eclaration(s) MUST be signed under penalty of perjury and attached to this motion***)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☒ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents. Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:  Debtors' Confirmed Chapter 13 Plan indicates their intention to surrender Subject Property. See Exhibit "5".

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under:  ☒ 11 U.S.C. § 362(d)(1)  ☐ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3. ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.  Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:

   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8. ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:

   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:

   ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

12. ☒ If relief from stay is not granted, adequate protection shall be ordered.

13. ☐ See attached continuation page for other relief requested.

Date: 10/28/2015

Law Offices of Les Zieve
Printed name of law firm (*if applicable*)

Leslie M. Klott
Printed name of individual Movant or attorney for Movant

/s/ Leslie M. Klott
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (print name of Declarant) _____**Javier Rivera**_____, declare·

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (specify):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (state title and capacity):

   c. ☒ Other (specify): I am **Contract Management Coordinator** of Ocwen Loan Servicing, LLC the duly authorized and acting loan servicing agent for Deutsche Bank National Trust Company. solely as Trustee for MASTR Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates. Series 2006-3. Movant.

2. a ☐ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

   b. ☒ Other (see attached)· See Attachment Page.

3. The Movant is.

   a. ☐ Holder. Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer. A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☐ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary. True and correct copies of the recorded security instrument and assignments are attached as Exhibit _____.

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☒ Other (specify): Movant is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed in blank.

4. a. The address of the Property is·

   Street address: 5148 Frazier Mountain Park Rd
   Unit/suite no..
   City, state, zip code: Frazier Park, CA 93225-9723

   b The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

   See Exhibit 2

---

This form is mandatory  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

5.  Type of property (*check all applicable boxes*):

    a. ☐ Debtor's principal residence    b. ☒ Other residence
    c. ☐ Multi-unit residential    d. ☐ Commercial
    e. ☐ Industrial    f. ☐ Vacant land
    g ☐ Other (*specify*):

6.  Nature of the Debtor's interest in the Property:

    a. ☐ Sole owner

    b. ☒ Co-owner(s) (*specify*):  Robert Lifson, M.D. and Toni Black

    c ☐ Lienholder (*specify*):

    d. ☐ Other (*specify*):

    e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

    f. ☒ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☒ trust deed.
        The deed was recorded on (*date*) _09/01/2005_.

7.  Movant holds a  ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
    that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit __2__.

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is
        attached as Exhibit __1__

    c ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of
        trust to Movant is attached as Exhibit __3__.

8   Amount of Movant's claim with respect to the Property:

| | | PREPETITION | POSTPETITION | TOTAL | |
|---|---|---|---|---|---|
| a. | Principal:   [Plus Deferred Balance, if any] | $ | $ | $ | 540,109.66 |
| b. | Accrued interest: | $ | $ | $ | 160,433.56 |
| c. | Late charges | $ | $ | $ | 0.00 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ | 2,867.64 |
| e. | Advances (property taxes, insurance): | $ | $ | $ | 18,461.83 |
| f. | Less suspense account or partial balance paid | $[          ] | $[          ] | $[ | 478.31 ] |
| g. | TOTAL CLAIM as of (*date*):   10/05/2015 | $ | $ | $ | 721,394.38 |

    h.  ☐ Loan is all due and payable because it matured on (*date*) _____

9.  Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action
    has occurred*):

    a. Notice of default recorded on (*date*) _08/18/2008_ or ☐ none recorded.

    b. Notice of sale recorded on (*date*) _02/26/2010_ or ☐ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) _03/29/2010_ or ☐ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

---

This form is mandatory   It has been approved for use by the United States Bankruptcy Court for the Central District of California

June 2014                    Page 7                    F 4001-1.RFS.RP.MOTION

10. Attached (*optional*) as Exhibit __4__ is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11 ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___

   b. Number of payments that have come due and were not made: _____. Total amount: $_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

   An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $_____, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____

      (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

   Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☐ Relevant portions of the Debtor's schedules.

      (3) ☐ Other (*specify*):

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
   I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
   By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

This form is mandatory  It has been approved for use by the United States Bankruptcy Court for the Central District of California

i.  ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j.  ☐ The fair market value of the Property is declining because:

12. ☒ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a.  A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: _09/03/2013_.
    A plan confirmation hearing currently scheduled for (or concluded on) the following date: _05/12/2014_.
    A plan was confirmed on the following date (*if applicable*): _05/21/2014_.

b.  Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| 10 | | $  4,973.20 | $  49,732.00 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____ )

c.  Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| 17 | | $  4,973.20 | $  84,544.40 |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d.  Postpetition advances or other charges due but unpaid:                        $    0.00
    (*For details of type and amount, see Exhibit _____*)

e.  Attorneys' fees and costs.                                                      $    0.00
    (*For details of type and amount, see Exhibit _____*)

f.  Less suspense account or partial paid balance:                              $[   0.00        ]

    TOTAL POSTPETITION DELINQUENCY:                              $    134,276.40

g.  Future payments due by time of anticipated hearing date (*if applicable*): ____1____
    An additional payment of $_____4,973.20_____ will come due on _11/01/2015_, and on
    the _1st_ day of each month thereafter. If the payment is not received by the _15_ day of the month, a late
    charge of $ _6% of Payment_ will be charged to the loan.

h.  Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how
    applied (if applicable):
    $_____ received on (*date*) _No payments received_
    $_____ received on (*date*) _____
    $_____ received on (*date*) _____

i.  ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent.
    A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or
    13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory  It has been approved for use by the United States Bankruptcy Court for the Central District of California

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

  a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

  b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

  c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

  d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

  a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

  b. ☐ Multiple bankruptcy cases affecting the Property include:

    1. Case name: _____
      Chapter: _____ Case number: _____
      Date filed: _____ Date discharged: _____ Date dismissed. _____
      Relief from stay regarding the Property ☐ was ☐ was not granted.

    2. Case name: _____
      Chapter: _____ Case number: _____
      Date filed: _____ Date discharged: _____ Date dismissed: _____
      Relief from stay regarding the Property ☐ was ☐ was not granted.

    3. Case name: _____
      Chapter: _____ Case number: _____
      Date filed: _____ Date discharged: _____ Date dismissed: _____
      Relief from stay regarding the Property ☐ was ☐ was not granted.

  ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

  ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 10                                    F 4001-1.RFS.RP.MOTION

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s)

   a  ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b.  ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c.  ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| 10/22/2015 | Javier Rivera | _Javier Rivera_ |
| Date | Printed name | Signature |
| | Contract Management Coordinator | |

This form is mandatory  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re                                         (SHORT TITLE)<br>Robert Lifson and Toni Lee Black<br><div align="right">Debtor(s).</div> | CHAPTER: 13<br><br>CASE NO.: 2:13-bk-28666-VZ |
| --- | --- |

### ATTACHMENT PAGE

**(MOVANT:** <u>Deutsche Bank National Trust Company, solely as Trustee for MASTR Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates, Series 2006-3, by Ocwen Loan Servicing, LLC, as servicer</u> **)**

### <u>ATTACHMENT 2.b.</u>

☒    I have access to the bankruptcy books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property. I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant. These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

**LAW OFFICES OF LES ZIEVE**
**BRIAN H. TRAN, ESQ. #255577**
**LESLIE M. KLOTT, ESQ. #279622**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**Phone: (714) 848-7920**
**Facsimile: (714) 908-7807**
**Email: bankruptcy@zievelaw.com**

Counsel for Movant, Deutsche Bank National Trust Company, solely as Trustee for MASTR
Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates, Series 2006-3, by Ocwen
Loan Servicing, LLC, as servicer

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Robert Lifson and Toni Lee Black,<br><br>        Debtors. | Case No.: 2:13-bk-28666-VZ<br><br>CHAPTER 13 |
| Deutsche Bank National Trust Company,<br>solely as Trustee for MASTR Specialized loan<br>Trust 2006-3 Mortgage Pass-Through<br>Certificates, Series 2006-3, by Ocwen Loan<br>Servicing, LLC, as servicer, its assignees<br>and/or successors in interest,<br><br>        Movant,<br><br>vs.<br><br>Robert Lifson and Toni Lee Black, Debtors,<br>Nancy K Curry (TR), Trustee,<br><br>        Respondents. | **SUPPLEMENTAL DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>**HEARING:**<br>Date    November 24, 2015<br>Time:   9:30 a.m.<br>Place:   United States Bankruptcy Court<br>         Courtroom 1368<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

### SUPPLEMENTAL DECLARATION IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY

I, _____ Javier Rivera _____ declare under penalty of perjury as

follows:

1.        I am employed as a Contract Management Coordinator of Ocwen Loan Servicing, LLC ("Ocwen") and am authorized to sign this supplemental declaration on behalf of Ocwen, as servicing agent for Deutsche Bank National Trust Company, solely as Trustee for MASTR Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates, Series 2006-3 ("Movant"). This supplemental declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.        I make this declaration based upon my review of the records with regard to this underlying loan transaction, which are kept in the ordinary course of business of Ocwen. As part of my job responsibilities for Ocwen, I have personal knowledge of and am familiar with the types of records maintained by Ocwen in connection with the loan that is the subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of Ocwen that pertain to the Loan and extensions of credit given to Debtors concerning the property securing such Loan.

3.        The information in this declaration is taken from Ocwen's business records regarding the Loan.  The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of Ocwen's regularly conducted business activities; and (c) it is the regular practice of Ocwen to make such records.

4.        Ocwen Loan Servicing, LLC services the underlying mortgage loan and note for the property referenced in this Motion for Relief for Deutsche Bank National Trust Company, solely as Trustee for MASTR Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates, Series 2006-3 and is entitled to proceed accordingly.  Should the Automatic Stay be lifted and/ or set aside by Order of this Court or if this case is dismissed or if the debtor obtains a discharge and a foreclosure action is commenced or recommenced, said foreclosure action will

be conducted in the name of Deutsche Bank National Trust Company, solely as Trustee for MASTR Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates, Series 2006-3. Deutsche Bank National Trust Company, solely as Trustee for MASTR Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates, Series 2006-3 has the right to foreclose because Movant is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. Movant, directly or through an agent, has possession of the promissory note and the promissory note is either made payable to Movant or has been duly endorsed.

5.    The Debtors Robert Lifson aka Robert Lifson, M.D. and Toni Lee Black aka Toni Black, have executed and delivered or are otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Movant, directly or through an agent, has possession of the Note. The Note is either made payable to Movant or has been duly endorsed. A true and correct copy of the Note is attached to the Declaration in Support of Motion for Relief as **Exhibit "1"**.

6.    Pursuant to the Deed of Trust, all obligations of the Debtors Robert Lifson aka Robert Lifson, M.D. and Toni Lee Black aka Toni Black under the Note and Deed of Trust with respect to the Loan are secured by certain real property located at **5148 Frazier Mountain Park Rd, Frazier Park, California 93225-9723**. A true and correct copy of the Deed of Trust is attached to the Declaration in Support of Motion for Relief hereto as **Exhibit "2"**.

7.    Movant is the original mortgagee or beneficiary or the assignee of the Deed of Trust. A true and correct copy of the assignments of the Deed of Trust is attached to the Declaration in Support of Motion for Relief as **Exhibit "3"**.

8.    Based on a review of the Debtors' Chapter 13 Plan filed in this case on March 24, 2014, the confirmed plan states that the Debtors intend to surrender certain real property located at 5148 Frazier Mountain Park Rd., Frazier Park, CA  93225-9723. A true and correct copy of

3

Debtors' Chapter 13 Plan is attached to the Declaration in Support of Motion for Relief hereto as **Exhibit "5".**

9.    As of **October 5, 2015,** there are one or more defaults in paying Debtors' post-petition amounts due with respect to the Note.

10.    As of **October 5, 2015,** the unpaid principal balance of the Note is $540,109.66.

11.    The following chart sets forth those post-petition payments, due pursuant to the terms of the Note, that have been missed by the Debtors as of **October 5, 2015:**

| Number of Missed Monthly Payments | From | To | Missed Monthly Principal and Interest | Missed Monthly Escrow (if applicable) | Monthly Payment Amount | Total Amount Missed |
|---|---|---|---|---|---|---|
| 27 | 08/01/2013 | 10/01/2015 | $3,621.41 | $1,351.79 | $4,973.20 | $134,276.40 |
| Less post-petition partial payments (suspense balance): | | | | | | ($0.00) |

<div align="right">

**Total:**        **$ 134,276.40**

</div>

12.    As of **October 5, 2015** the total postpetition arrearage/delinquency is $**134,276.40.** The total of missed postpetition payments for this escrow loan include any missed escrow payments.  Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable).  To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments.  As part of the next annual RESPA analysis, movant will determine whether the escrow payments assessed to the debtors (including the missed escrow payments) result in a projected escrow shortage or overage.  All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetiton arrearage/delinquency is qualified accordingly.

4

13.     Attached to the Declaration in Support of Motion for Relief Attached as **Exhibit "4"** is a postpetition payment history, which history is incorporated herein by reference.

14.     Pursuant to the Note, an additional monthly payment in the amount of $ 4,973.20 will come due on 11/01/2015.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 22ND day of October, 2015, at West Palm Beach (city), Florida (state).

Name:     Javier Rivera

Title:     Contract Management Coordinator

STATE OF FLORIDA          )
                          )
COUNTY OF PALM BEACH      )

The foregoing instrument was acknowledged and sworn before me this 22nd day of OCT, 2015, by **Javier Rivera** as a Contract Management Coordinator of Ocwen Loan Servicing, LLC, who is personally known to me or who has produced _____ as identification.

MICHELLE ABRAHAM
Commission # FF 61206
My Commission Expires
October 08, 2017

NOTARY PUBLIC in and for the State of Florida

(NAME)          Michelle Abraham

My commission expires   10/08/2017

5

# ADJUSTABLE RATE NOTE
## (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

5148  FRAZIER MOUNTAIN PARK RD,  FRAZIER PARK, CA 93225-9723
[Property Address]

1.      **BORROWER'S PROMISE TO PAY**
        In return for a loan that I have received, I promise to pay U.S.        $582,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
                        Option One Mortgage Corporation, a California Corporation
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.      **INTEREST**
        Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of      6.350%      . The interest rate I will pay may change in accordance with Section 4 of this Note.
        The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3.      **PAYMENTS**
        **(A) Time and Place of Payments**
        I will pay principal and interest by making payments every month.
        I will make my monthly payments on the first day of each month beginning on  October 01      ,  2005    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on,
 September 01         ,  2035      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
        I will make my monthly payments at    Option One Mortgage Corporation
                        P.O. BOX 92103 LOS ANGELES, CA 90009-2103
or at a different place if required by the Note Holder.
        **(B) Amount of My Initial Monthly Payments**
        Each of my initial monthly payments will be in the amount of U.S.     $3,621.41      . This amount may change.
        **(C) Monthly Payment Changes**
        Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.
        **(D) Application of Payments**
        Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

4.      **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
        **(A) Change Dates**
        The interest rate I will pay may change on the first day of    September 01      ,  2010      , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
        **(B) The Index**
        Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."
        If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
        **(C) Calculation of Changes**
        Before each Change Date, the Note Holder will calculate my new interest rate by adding
    FOUR AND 35/100                                        percentage point(s) ( 4.350%      )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
        The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

# EXHIBIT 1

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than    9.350%    or less than    6.350%   . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than    12.350%    or less than    6.350%

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment. However, any reduction due to my partial prepayment may be offset by an interest rate increase.

If within    36 Months    from the date of execution of the Security Instrument I make a full prepayment or, in certain cases a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to six (6) months advance interest on the amount of any prepayment that, when added to all other amounts prepaid during the twelve (12) month period immediately preceding the date of the prepayment, exceeds twenty percent (20%) of the original principal amount of this Note. In no event will such a charge be made unless it is authorized by state or federal law.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    6.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument, except as otherwise required by applicable law.

**(C) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(D) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law, whether or not a lawsuit is filed. Those expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

USNT6022.wp (02-01-02)

# EXHIBIT 1

Loan Number: _____    Date: 08/23/05

**10.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.    SECURED NOTE**

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ROBERT   LIFSON   M.D.   -Borrower          TONI   BLACK             -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
-Borrower                                   -Borrower

[Sign Original Only]

USNT0023.wp (02-01-02)

# EXHIBIT 1

Loan Number:                                                              Date: 08/23/05

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: ROBERT   LIFSON  M.D. and TONI   BLACK
Loan #:
Property Address: 5148   FRAZIER MOUNTAIN PARK RD,   FRAZIER PARK, CA 93225-9723
Loan Amount: $582,000.00

Note Date:  08/23/05

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:

                                                          Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
        Ciara Haag

    Assistant Secretary

USD3050.wp (03-14-03)

# EXHIBIT 1

PREPARED BY AND
WHEN RECORDED MAIL TO:

OPTION ONE MORTGAGE CORPORATION
P.O. BOX 57096
IRVINE, CA 92619-7096

ATTN:  RECORDS MANAGEMENT

Loan Number:
Servicing Numb

[Space Above ‘

**James W. Fitch, Assessor — Recorder**   JASON
Kern County Official Records                9/01/2005
Recorded at the request of                 12:40 PM
**SoCal Document Processing**

DOC#:   **0205239448**



Stat Types: 1   Pages:  **12**

| | |
|---|---|
| Fees | 40.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $40.00 |

## DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on      August 23, 2005
The trustor is
ROBERT LIFSON  M.D.  AND TONI BLACK,  HUSBAND AND WIFE AS JOINT TENANTS

("Borrower").

The trustee is    PREMIER TRUST DEED SERVICES, INC.

("Trustee").

The beneficiary is
     Option One Mortgage Corporation, a California Corporation                    ,
which is organized and existing under the laws of        CALIFORNIA                ,
and whose address is    3 Ada, Irvine, CA  92618

("Lender").

Borrower owes Lender the principal sum of
 FIVE HUNDRED EIGHTY TWO THOUSAND  DOLLARS NO CENTS
                          . . .AND NO/100THs      Dollars (U.S. $582,000.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on      September 01, 2035     .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect
the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security
Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the
following described property located in                    Kern                    County, California:

 256-070-46-00-0


 SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.




which has the address of        5148  FRAZIER MOUNTAIN PARK RD, FRAZIER PARK
                                                                                (Street, City)

California          93225-9723          ("Property Address");
                    (Zip Code)

**CALIFORNIA - Single Family**
Page 1 of 8                                                        CAD10011 (10-07-98)

# EXHIBIT 2

Loan Number:                                                                                    Date:    08/23/05

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property".

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a Lender for a federal related mortgage loan may require for Borrower's escrow account under the Federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. @ 2601 *est seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits or accounts of which are insured or guaranteed by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not Charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this

CAD10012 (10-07-98)

# EXHIBIT 2

Loan Number:                                                                                      Date:    08/23/05

Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, any insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence  and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights

# EXHIBIT 2

Loan Number:                                                                                    Date:   08/23/05

or powers of Lender or trustee with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this

CAD10014 (10-07-98)

# EXHIBIT 2

Loan Number:                                                                                          Date:   08/23/05

Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

      **13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

      **14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

      **15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

      **16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

      **17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

      If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

      **18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

      **19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

      **20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and

CAD10015 (10-07-98)

# EXHIBIT 2

Loan Number: _____                          _          Date:  08/23/05

to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, or other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. If any monthly installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other deed of trust or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice and regardless of any prior forbearance. In such event, Lender, at its option, may then or thereafter deliver to Trustee a written declaration of default and demand for sale and shall cause to be filed of record a written notice of default and of election to cause to be sold the Property. Lender shall also deposit with Trustee this Security Instrument and any notes and all documents evidencing expenditures secured hereby.**

After the lapse of such time as then may be required by law following recordation of such notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Borrower, shall sell the Property at the time and place specified by Trustee in such notice of sale, or at the time to which such noticed sale has been duly postponed, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale, except that Lender may offset its bid to the extent of the total amount owing to it under the Note and this Security Instrument, including Trustee's fees and expenses. Trustee may sell the Property as a whole or in separate parcels if there is more than one parcel, subject to such rights as Borrower may have by law to direct the manner or order of sale, or by such other manner of sale which is authorized by law. Trustee may postpone the time of sale of all or any portion of the Property by public declaration made by Trustee at the time and place last appointed for sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**22. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

**23. Substitute Trustee.** Lender may, from time to time, by instrument in writing, substitute a successor or successors to any Trustee named in this Security Instrument or acting hereunder. Such instrument shall be executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties where the property is situated and shall be conclusive proof of the proper substitution of such successor Trustee or Trustees. Such successor Trustee or Trustees shall, without conveyance from the predecessor Trustee, succeed to all its title, estate, rights, powers and duties. The procedure herein provided for substitution of Trustees shall not be exclusive of other provisions for substitution permitted by law.

**24. Request for Notices.** Borrower requests that copies of the notices of default and sale be sent to Borrower's address

# EXHIBIT 2

Loan Number:                                                                        Date:   08/23/05

which is the Property Address.

**25. Statement of Obligation Fee.** Lender may collect a fee equal to the maximum amount as may from time to time be allowed by law for furnishing any statement of obligation, beneficiary's statement, beneficiary's demand or any other statement regarding the condition of or balance owing under the Note or secured by this Security Instrument.

**26. Offsets.** No indebtedness secured by this Security Instrument shall be deemed to have been offset or to be offset or compensated by all or part of any claim, cause of action, counterclaim or crossclaim, whether liquidated or unliquidated, which Borrower (or subject to Paragraph 17 of this Security Instrument, any successor to Borrower) now or hereafter may have or may claim to have against lender; and, in respect to the indebtedness now or hereafter secured hereby, Borrower waives, to the fullest extent permitted by law, the benefits of California Code of Civil Procedure Section 431.70 (and any successor laws) and any comparable or similar law of any other jurisdiction. Section 431.70 of the California Code of Civil Procedure provides as follows:

"Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in the answer the defense of payment in that the two demands are compensated so far as they equal each other, notwithstanding that an independent action asserting the person's claim would at the time of filing the answer be barred by the statute of limitations. If the cross-demand would otherwise be barred by the statute of limitations, the relief accorded under this section is not available if the cross-demand is barred for failure to asset it in a prior action under Section 426.30. Neither person can be deprived of the benefits of this section by the assignment or death of the other. For the purposes of this section, a money judgment is a "demand for money" and, as applied to a money judgment, the demand is barred by the statute of limitations when enforcement of the judgment is barred under Chapter 3 (commencing with Section 683.010) of Division 1 of Title 9."

**27. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable. Trustee, upon presentation to it of an affidavit signed by Lender setting forth facts showing a default by Borrower under this paragraph, is authorized to accept as true and conclusive all facts and statements therein, and to act thereon hereunder.

**28. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

**29. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by law.

**30. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

**31. Construction of the Security Instrument.** Borrower and Lender agree that this Security Instrument shall be interpreted in a fair, equal, and neutral manner as to each of the parties, notwithstanding the provisions of Section 1654 of the California Civil Code. Section 1654 of the California Civil Code provides as follows:

"In the cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist."

**32. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien reconveyances and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

**33. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s).

CAD10017 (10-07-98)

# EXHIBIT 2

Loan Number:                                                                              Date:  08/23/05

Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**34. Lost, Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan Document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**35. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security Instrument and Borrower has not abandoned the Property.

**36. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] No Prepayment Penalty Option Rider | [ ] Planned Unit Development Rider | [ ] Occupancy Rider |
| [ ] Other(s) (specify) | | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____          _____
ROBERT   LIFSON   M.D.              -Borrower                                          -Borrower

_____          _____
TONI   BLACK                        -Borrower                                          -Borrower

_____          _____
                                    -Borrower                                          -Borrower

**[Space Below This Line For Acknowledgment]**

State of California, County of _Los Angeles_                                          }SS:

On _August 26, 2005_                                before me, the undersigned, a Notary Public

in and for said State, personally appeared _Robert Lifson, MD and Toni Black,_

~~personally known~~ to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

Witness my hand and official seal.

(Reserved for official seal)

KOKISHA LEAONA DIAZ
Commission # 1392495
Notary Public - California
Los Angeles County
My Comm. Expires Jan 2, 2007

Signature _Kokisha Leaona Diaz_

Name (typed or printed) _Kokisha Leaona Diaz_

My commission expires: _Jan 2, 2007_

Page 8 of 8                                                                    CAD10018 (10-07-98)

EXHIBIT 2

Loan Number:                                                    Date:   08/23/05

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made August 23, 2005                              ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to

Option One Mortgage Corporation, a California Corporation
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

5148  FRAZIER MOUNTAIN PARK RD,   FRAZIER PARK, CA 93225-9723

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**The Note** provides for an initial interest rate of            6.350%                         . The
Note provides for changes in the interest rate and the monthly payments, as follows:

## 4.     INTEREST RATE AND MONTHLY PAYMENT CHANGES
### (A) Change Dates
The interest rate I will pay may change on the first day of   September 01  2010            ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
### (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
### (C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
FOUR AND 35/100                              percentage point(s) ( 4.350%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX – Single Family
Page 1 of 3                                                    USRI0021 (02-23-99)

# EXHIBIT 2

Loan Number: _____                              Date:  08/23/05

be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than
9.350%  or less than  6.350%                    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than      12.350%                      or less than  6.350%        .

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 2 of 3

USRI0022 (02-23-99)

# EXHIBIT 2

Loan Number: _____                    Date:  08/23/05

        BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____(Seal)          _____(Seal)
ROBERT   LIPSON   M.D.                              TONI   BLACK

_____(Seal)          _____(Seal)

_____(Seal)          _____(Seal)

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 3 of 3

                                                    USRI0023 (02-23-99)

# EXHIBIT 2

# LEGAL DESCRIPTION

The land referred to herein is situated in the State of California, County of Kern, Unincorporated Area, and described as follows:

PARCEL 3, PARCEL MAP NO. 8635, AS PER MAP RECORDED SEPTEMBER 16, 1988 IN BOOK 36, PAGE 173 OF PARCEL MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM TO THE UNITED STATES PURSUANT TO THE PROVISIONS ACT OF AUGUST 1, 1946 (60 STAT. 755) ALL URANIUM, THORIUM OR ANY OTHER MATERIAL WHICH IS OR MAY BE DETERMINED TO BE PECULIARLY ESSENTIAL TO THE PRODUCTION OF FISSIONABLE MATERIALS, WHETHER OR NOT OF COMMERCIAL VALUE, TOGETHER WITH RIGHT OF THE UNITED STATES THROUGH ITS AUTHORIZED AGENTS OR REPRESENTATIVES AT ANY TIME TO ENTER UPON THE LAND AND PROSPECT FOR, MINE AND REMOVE THE SAME.

APN: 256-070-46

End of Legal Description

# EXHIBIT 2

James W. Fitch, Assessor — Recorder    SABRINA
Kern County Official Records    1/26/2009
Recorded at the request of    10:59 AM
**Document Process Solution**

**FIRST AMERICAN TITLE INSURANCE COMPANY**
Requested and Prepared by
ETS Services, LLC

D O C # :    **0209010282**    Stat Types: 1    Pages:    1

| | |
|---|---|
| Fees | 12.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $12.00 |

When Recorded Mail To:
ETS Services, LLC
2255 North Ontario Street, Suite 400
Burbank, California 91504-3120

---

Loan No.:
TS NO: **G**

### ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

 GMAC MORTGAGE, LLC, FKA GMAC MORTGAGE CORPORATION

all beneficial interest under that certain Deed of Trust dated: 8/23/2005 executed by ROBERT
LIFSON M.D. AND TONI BLACK, HUSBAND AND WIFE AS JOINT TENANTS, as Trustor(s), to
PREMIER TRUST DEED SERVICES, INC., as Trustee, and recorded as Instrument No. 0205239448,
on 9/1/2005, in Book , Page  of Official Records, in the office of the County Recorder of Kern
County, California together with the Promissory Note secured by said Deed of Trust and also all
rights accrued or to accrue under said Deed of Trust.

DATE: 8/18/2008

Sand Canyon Corporation, FKA Option One
Mortgage Corporation.

Rhonda Werdel
Assistant Secretary

State of CA    } ss.
County of Orange    }

On 1|2|2009 before me, R.A. Salazar Notary Public, personally appeared Rhonda Werdel who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to
the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under penalty of perjury under the laws of the State of ____CA____ that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ . (Seal)

R. A. SALAZAR
Commission # 1759905
Notary Public - California
Orange County
My Comm. Expires Aug 2, 2011

## EXHIBIT 3

**James W. Fitch, Assessor—Recorder**
Kern County Official Records

SABRINA
8/13/2013
8:51 AM

Recorded at the request of
**Public**

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY
RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO:

Ocwen Loan Servicing
Attn: Bankruptcy Department
1100 Virginia Drive, Suite 175
Fort Washington, PA 19034

DOC#:   0213114852

| Stat Types: 1 | Pages: 1 |
|---|---|
| Fees | 16.00 |
| Taxes | 0.00 |
| Others | 0.00 |
| PAID | $16.00 |

**IMPORTANT NOTICE**
Note:  After having been recorded, this Assignment should be kept with the Note and Deed of Trust hereby assigned

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, the undersigned hereby grants, assigns, and transfers to Deutsche Bank National Trust Company, solely as Trustee for MASTR Specialized loan Trust 2006-3 Mortgage Pass-Through Certificates, Series 2006-3 all beneficial interest under that certain Deed of Trust dated August 23, 2005, executed by Robert Lifson M.D. and Toni Black, husband and wife as joint tenants to Premier Trust Deed Services, Inc., as Trustee; and recorded September 1, 2005, as Document No. 0205239448, in the Official Records of the County Recorder of KERN County, CA.

TOGETHER with the rights accrued or to accrue under said Deed of Trust including the right to have reconveyed, in whole or in part the real property described therein.

Dated:   7-23-13         GMAC Mortgage, LLC, FKA GMAC Mortgage Corporation

7-23-13

State of   Pennsylvania         Vadim Praysman     Authorized Officer
County of   Montgomery

Lisa Howlin Thomas

On   7-23-13   before me, _____, Notary Public, personally appeared
Vadim Praysman _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same and his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Pennsylvania that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Lisa Howlin Thomas
Prepared by: RCO Legal, P.S., 1241 E. Dyer Road, Suite 250, Santa Ana, CA 92705

```
NOTARIAL SEAL
LISA HOWLIN THOMAS
Notary Public
CHELTENHAM TWP, MONTGOMERY COUNTY
My Commission Expires May 8, 2016
```



# EXHIBIT 3

# POST PETITION PAYMENT HISTORY

EXHIBIT "4"

| Debtor Name: | Robert L Ifison M D | | | | Completed by: | Stan | |
|---|---|---|---|---|---|---|---|
| BK Case Number: | 13-28666 | | | | Completed Date: | | |
| Filing Date: | 07/2013 | | | | | | 10/6/2015 |
| Post First Due: | 08/01/13 | | | | | | |
| Post-Petition Due | Date Received | Amount Received | Amount Due | | Suspense Application | | Suspense Balance |
| | No Payments Received | | | | $ - | $ - | $ - |
| | | | | | $ - | $ - | $ - |

# PAYMENTS DUE HISTORY

| Debtor Name: | Robert Lifson M D | | | Completed: | | 10/6/2015 |
|---|---|---|---|---|---|---|
| BK Case Number: | 13-28666 | | | Completed By: | Stan | |
| Filing Date: | 07/23/13 | | | | | |

|  |  | Debtor Post Due: | | | |
|---|---|---|---|---|---|
| Due Date | Total Payment | Principal | Interest | Escrow | NOPC Filed Date |
| 8/1/2013 | $ 4,973.20 | $ 889.58 | $ 2,731.83 | $ 1,351.79 | |
| 9/1/2013 | $ 4,973.20 | $ 894.28 | $ 2,727.13 | $ 1,351.79 | |
| 10/1/2013 | $ 4,973.20 | $ 899.01 | $ 2,722.40 | $ 1,351.79 | |
| 11/1/2013 | $ 4,973.20 | $ 903.77 | $ 2,717.64 | $ 1,351.79 | |
| 12/1/2013 | $ 4,973.20 | $ 908.55 | $ 2,712.86 | $ 1,351.79 | |
| 1/1/2014 | $ 4,973.20 | $ 913.36 | $ 2,708.05 | $ 1,351.79 | |
| 2/1/2014 | $ 4,973.20 | $ 918.20 | $ 2,703.21 | $ 1,351.79 | |
| 3/1/2014 | $ 4,973.20 | $ 923.05 | $ 2,698.36 | $ 1,351.79 | |
| 4/1/2014 | $ 4,973.20 | $ 927.94 | $ 2,693.47 | $ 1,351.79 | |
| 5/1/2014 | $ 4,973.20 | $ 932.85 | $ 2,688.56 | $ 1,351.79 | |
| 6/1/2014 | $ 4,973.20 | $ 937.79 | $ 2,683.62 | $ 1,351.79 | |
| 7/1/2014 | $ 4,973.20 | $ 942.75 | $ 2,678.66 | $ 1,351.79 | |
| 8/1/2014 | $ 4,973.20 | $ 947.74 | $ 2,673.67 | $ 1,351.79 | |
| 9/1/2014 | $ 4,973.20 | $ 952.75 | $ 2,668.66 | $ 1,351.79 | |
| 10/1/2014 | $ 4,973.20 | $ 957.79 | $ 2,663.62 | $ 1,351.79 | |
| 11/1/2014 | $ 4,973.20 | $ 962.86 | $ 2,658.55 | $ 1,351.79 | |
| 12/1/2014 | $ 4,973.20 | $ 967.96 | $ 2,653.45 | $ 1,351.79 | |
| 1/1/2015 | $ 4,973.20 | $ 973.08 | $ 2,648.33 | $ 1,351.79 | |
| 2/1/2015 | $ 4,973.20 | $ 978.23 | $ 2,643.18 | $ 1,351.79 | |
| 3/1/2015 | $ 4,973.20 | $ 983.40 | $ 2,638.01 | $ 1,351.79 | |
| 4/1/2015 | $ 4,973.20 | $ 988.61 | $ 2,632.80 | $ 1,351.79 | |
| 5/1/2015 | $ 4,973.20 | $ 993.84 | $ 2,627.57 | $ 1,351.79 | |
| 6/1/2015 | $ 4,973.20 | $ 999.10 | $ 2,622.31 | $ 1,351.79 | |
| 7/1/2015 | $ 4,973.20 | $ 1,004.39 | $ 2,617.02 | $ 1,351.79 | |
| 8/1/2015 | $ 4,973.20 | $ 1,009.70 | $ 2,611.71 | $ 1,351.79 | |
| 9/1/2015 | $ 4,973.20 | $ 1,015.04 | $ 2,606.37 | $ 1,351.79 | |
| 10/1/2015 | $ 4,973.20 | 1020.41 | 2601 | 1351.79 | |
|  | $ - | | | | |

# EXHIBIT "4"

# PAYMENTS DUE HISTORY

|  | $ | - | $ | 25,746.03 | $ | 72,032.04 | $ | 36,498.33 |
|---|---|---|---|---|---|---|---|---|
| Total Due | $ | 134,276.40 |  |  |  |  |  |  |

# EXHIBIT "4"

| Attorney or Party Name, Address, Telephone & FAX Nos.:, State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| **Caroline Kim 249190**<br>**3711 Long Beach Blvd., Ste. 710**<br>**Long Beach, CA 90807**<br>**562-988-5988**<br>**249190**<br><br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for: Debtor* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

</div>

| List all names (including trade names) used by the debtor within the last 8 years: | CASE NO.:. **2:13-bk-28666** |
|---|---|
| **Robert Lifson**<br><br>**Toni Lee Black**<br><br><br><br><br><br><br>Debtor(s). | CHAPTER **13**<br><br>**FOURTH AMENDED CHAPTER 13 PLAN**<br><br>**CREDITORS MEETING:**<br>**Date:**<br>**Time:**<br>**Place:**<br><br><br>**CONFIRMATION HEARING:**<br>**Date:**   04/14/2014<br>**Time:**   09:00am<br>**Place:**   COURTROOM 1368 |

<div align="center">

**NOTICE**

</div>

This Chapter 13 Plan is proposed by the above Debtor. The Debtor attests that the information stated in this Plan is accurate. Creditors cannot vote on this Plan. However, creditors may object to this Plan being confirmed pursuant to 11 U.S.C. § 1324. Any objection must be in writing and must be filed with the court and served upon the Debtor, Debtor's attorney (if any), and the chapter 13 trustee not less than 7 days before the date set for the meeting of creditors. Unless an objection is filed and served, the court may confirm this Plan. The Plan, if confirmed, modifies the rights and duties of the Debtor and creditors to the treatment provided in the Plan as confirmed, with the following IMPORTANT EXCEPTIONS:

Unless otherwise provided by law, each creditor will retain its lien until the earlier of payment of the underlying debt determined under non-bankruptcy law or discharge under 11 U.S.C.§1328. If the case under this chapter is dismissed or converted without completion of the Plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law.

Defaults will be cured using the interest rate set forth below in the Plan. Any ongoing obligation will be paid according to the terms of the Plan.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    *Page 1*                    **F3015-1.01.CHAPTER13.PLAN**

<div align="center">

EXHIBIT "5"

</div>

**HOLDERS OF SECURED CLAIMS AND CLASS 1 CLAIMANTS WILL BE PAID ACCORDING TO THIS PLAN AFTER CONFIRMATION UNLESS THE SECURED CREDITOR OR CLASS 1 CLAIMANT FILES A PROOF OF CLAIM IN A DIFFERENT AMOUNT THAN THAT PROVIDED IN THE PLAN.** If a secured creditor or a class 1 creditor files a proof of claim, that creditor will be paid according to that creditor's proof of claim, unless the court orders otherwise.

**HOLDERS OF ALL OTHER CLAIMS MUST TIMELY FILE PROOFS OF CLAIMS, IF THE CODE SO REQUIRES, OR THEY WILL NOT BE PAID ANY AMOUNT.** A Debtor who confirms a Plan may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

The Debtor proposes the following Plan and makes the following declarations:

I.   **PROPERTY AND FUTURE EARNINGS OR INCOME SUBJECT TO THE SUPERVISION AND CONTROL OF THE CHAPTER 13 TRUSTEE:**

The Debtor submits the following to the supervision and control of the chapter 13 trustee:

A.   Payments by Debtor of **$1,200.00** per month for **1** month, then **$1,350.00** per month for **59** months.  This monthly Plan Payment will begin within 30 days of the date the petition was filed.

B.   The base plan amount is $ **80,850.00**  which is estimated to pay  **4** % of the allowed claims of nonpriority unsecured creditors. If that percentage is less than 100%, the Debtor will pay the Plan Payment stated in this Plan for the full term of the Plan or until the base plan amount is paid in full, and the chapter 13 trustee may increase the percentage to be paid to creditors accordingly.

C.   Amounts necessary for the payment of postpetition claims allowed under 11 U.S.C. § 1305.

D.   Preconfirmation adequate protection payments for any creditor who holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in the plan. Preconfirmation adequate protection payments and preconfirmation lease payments will be paid to the chapter 13 trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
| Toyota Mtr | 2008 Toyota Highland, hybrid, 35k miles -value per KBB | xxxxxxxxxxxx0001 | $503.74 |

Each adequate protection payment or preconfirmation lease payment will commence on or before the 30th day from the date of filing of the case. The chapter 13 trustee shall deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from the Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured(s) creditor(s) at the next available disbursement or as soon as practicable after the payment is received and posted to the chapter 13 trustee's account. The chapter 13 trustee will take his or her statutory fee on all disbursements made for preconfirmation adequate protection payments or preconfirmation lease payments.

E.   Other property:  (specify property or indicate none)
**NONE**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

EXHIBIT "5"

**II. ORDER OF PAYMENTS; CLASSIFICATION AND TREATMENT OF CLAIMS:**
Except as otherwise provided in the Plan or by court order, the chapter 13 trustee shall disburse all available funds for the payment of claims as follows:

A.  ORDER OF PAYMENTS:

    1.  If there are Domestic Support Obligations, the order of priority shall be:

        (a)  Domestic Support Obligations and the chapter 13 trustee's fee not exceeding the amount accrued on payments made to date;

        (b)  Administrative expenses (Class 1(a)) in an amount not exceeding **100** % of each Plan Payment until paid in full;

    2.  If there are no Domestic Support Obligations, the order of priority shall be the chapter 13 trustee's fee not exceeding the amount accrued on payments made to date, and administrative expenses (Class 1(a)) in an amount not exceeding **100** % of each Plan Payment until paid in full.

    3.  Notwithstanding 1 and 2 above, ongoing payments on secured debts that are to be made by the chapter 13 trustee from the Plan Payment; such secured debt may be paid by the chapter 13 trustee commencing with the inception of Plan Payments.

    4.  Subject to 1, 2, and 3 above, pro rata to all other claims except as otherwise provided in the Plan.

    5.  No payment shall be made on nonpriority unsecured claims until all secured and priority claims have been paid in full.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                     Page 3                     **F3015-1.01.CHAPTER13.PLAN**

EXHIBIT "5"

B.   CLASSIFICATION AND TREATMENT OF CLAIMS:

| CLASS 1 |||||| 
|---|---|---|---|---|---|
| ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507 |||||| 
| The Debtor will pay Class 1 claims in full; except the debtor may provide for less than full payment of Domestic Support Obligations pursuant to 11 U.S.C. §1322(a)(4). |||||| 
| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| a.   Administrative Expenses |||||| 
| (1)   Chapter 13 trustee's fee – estimated at **10%** of all payments to be made to all classes through this Plan. |||||| 
| (2)   Attorney's Fees | $2,500.00 | | $625.00 | 4 | $2,500.00 |
| (3)   Chapter 7 trustee's fees | | | | | |
| (4)   Other | | | | | |
| b.   Other Priority Claims |||||| 
| (1)   Internal Revenue Service | | | | | |
| (2)   Franchise Tax Board | | | | | |
| (3)   Domestic Support Obligation | | | | | |
| (4)   Other | | | | | |
| Franchise Tax Board | $268.00 | 0% | $6.87 | 39 | $268.00 |
| IRS | $27,449.00 | 0% | $703.82 | 39 | $27,449.00 |
| c.   Domestic Support Obligations that are not to be paid in full in the Plan (*specify creditor name*): |||||| 
| | | | | | |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

EXHIBIT "5"

| CLASS 2 |
|---|

### CLAIMS SECURED SOLELY BY PROPERTY THAT IS THE DEBTOR'S PRINCIPAL RESIDENCE ON WHICH OBLIGATION MATURES <u>AFTER</u> THE FINAL PLAN PAYMENT IS DUE

1. ☐    The postconfirmation monthly mortgage payment will be made by the chapter 13 trustee from the Plan Payment to:

2. ☐    The postconfirmation monthly mortgage payment will be made by the Debtor directly to:

_____             _____
(name of creditor)                                      (last 4 digits of account number)

_____             _____
(name of creditor)                                      (last 4 digits of account number)

**The Debtor will cure all prepetition arrearages for the primary residence through the Plan Payment as set forth below.**

| | | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| Name of Creditor | Last 4 Digits of Account Number | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| | | | | | | |
| | | | | | | |

| CLASS 3 |
|---|

### CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE PAID IN FULL DURING THE TERM OF THE PLAN

| Name of Creditor | Last 4 Digits of Account No. | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | Equal Monthly Payment | NUMBER OF MONTHS | TOTAL PAYMENT |
|---|---|---|---|---|---|---|---|
| Toyota Mtr | xxxxxxxxxxx xx0001 | $26,838.52 | $25,900.00 | 6.25 | $503.74 | 60 | $30,224.13 |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

December 2012                                Page 5                                F3015-1.01.CHAPTER13.PLAN

EXHIBIT "5"

## CLASS 4

### OTHER SECURED CLAIMS ON WHICH THE LAST PAYMENT IS DUE AFTER THE DATE ON WHICH THE FINAL PAYMENT UNDER THE PLAN IS DUE

1. ☐   The postconfirmation monthly payment pursuant to the promissory note will be made by the chapter 13 trustee from the Plan Payment to:

2. ☐   The postconfirmation monthly payment pursuant to the promissory note will be made by the Debtor directly to:

| _____ | _____ |
| (name of creditor) | (last 4 digits of account number) |
| _____ | _____ |
| (name of creditor) | (last 4 digits of account number) |

The Debtor will cure all prepetition arrearages on these claims through the Plan Payment as set forth below.

| | | | Cure of Default | | | |
|---|---|---|---|---|---|---|
| Name of Creditor | Last 4 Digits of Account Number | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| | | | | | | |
| | | | | | | |

## CLASS 5

### NON-PRIORITY UNSECURED CLAIMS

The Debtor estimates that non-priority unsecured claims total the sum of  $326,408.86 .

Class 5 claims will be paid as follows:

(Check one box only.)

☒   Class 5 claims (including allowed unsecured amounts from Class 3) are of one class and will be paid pro rata.

OR

☐   Class 5 claims will be divided into subclasses as shown ~~on the attached exhibit~~ *directly below* (which also shows the justification for the differentiation among the subclasses) and the creditors in each subclass will be paid pro rata.

## III.   COMPARISON WITH CHAPTER 7

The value as of the effective date of the Plan of property to be distributed under the Plan on account of each allowed claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. The amount distributed to nonpriority unsecured creditors in chapter 7 would be $ **0.00** which is estimated to pay **0** % of the scheduled nonpriority unsecured debt.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                 Page 6                 F3015-1.01.CHAPTER13.PLAN

EXHIBIT "5"

## IV. PLAN ANALYSIS

| | |
|---|---:|
| CLASS 1a | $2,500.00 |
| CLASS 1b | $27,717.00 |
| CLASS 1c | $0.00 |
| CLASS 2 | $0.00 |
| CLASS 3 | $30,224.13 |
| CLASS 4 | $0.00 |
| CLASS 5 | $13,058.71 |
| SUB-TOTAL | $73,499.84 |
| CHAPTER 13 TRUSTEE'S FEE (Estimated 10% unless advised otherwise) | $7,350.16 |
| TOTAL PAYMENT | $80,850.00 |

## V. OTHER PROVISIONS

A. The Debtor rejects the following executory contracts and unexpired leases.
   **Name of Other Party:**          **Description of contract/lease:**
   -NONE-

B. The Debtor assumes the executory contracts or unexpired leases set forth in this section. As to each contract or lease assumed, any defaults therein and Debtor's proposal for cure of said default(s) is described in Class 4 of this Plan. The Debtor has a leasehold interest in personal property and will make all post-petition payments directly to the lessor(s):
   **Name of Other Party:**          **Description of contract/lease:**
   -NONE-

C. In addition to the payments specified in Class 2 and Class 4, the Debtor will make regular payments, including any preconfirmation payments, directly to the following:
   **Creditor Name:**          **Monthly Payment:**
   -NONE-

D. The Debtor hereby surrenders the following personal or real property. (*identify property and creditor to which it is surrendered*):
   **Creditor Name:**          **Description:**
   **Gmac Mort.**          **Primary Residence located at 5148 Frazier Mountain Park Road, Frazier Park, California -surrendering**
   **Real Time Resolutions, Inc.**          **Primary Residence located at 5148 Frazier Mountain Park Road, Frazier Park, California -surrendering**

E. The Debtor shall incur no debt greater than $500.00 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

F. Miscellaneous provisions: (*use attachment, if necessary*):

G. The chapter 13 trustee is authorized to disburse funds after the date confirmation is announced in open court.

H. The Debtor will pay timely all postconfirmation tax liabilities directly to the appropriate taxing authorities as they come due.

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

EXHIBIT "5"

I.   The Debtor will pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the petition.

## VI.   REVESTING OF PROPERTY

Property of the estate shall not revest in the Debtor until such time as a discharge is granted or the case is dismissed or closed without discharge. Revestment shall be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate shall vest in accordance with applicable law. After confirmation of the Plan, the chapter 13 trustee shall have no further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs. Prior to any discharge or dismissal, the Debtor must seek approval of the court to purchase, sell, or refinance real property.

Date:   **March 24, 2014**

**/s/ Caroline Kim**
**Caroline Kim 249190**
**249190**
Attorney for Debtor

**/s/ Robert Lifson**
**Robert Lifson**
Debtor

**/s/ Toni Lee Black**
**Toni Lee Black**
Joint Debtor

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

_December 2012_                                   _Page 8_                                   **F3015-1.01.CHAPTER13.PLAN**

EXHIBIT "5"

| Attorney or Party Name, Address, Telephone & FAX Numbers, and California State Bar Number | FOR COURT USE ONLY |
|---|---|
| **Caroline Kim**<br>**Kim Law Goup, P.C.**<br>3711 Long Beach Blvd. Ste. 710<br>Long Beach, CA 90807<br>562-988-5988 Facsimile: 562-988-5994<br>**249190**<br>☒ *Attorney for Debtor(s):* | |

<table>
<tr>
<td colspan="2" align="center"><strong>UNITED STATES BANKRUPTCY COURT</strong><br><strong>CENTRAL DISTRICT OF CALIFORNIA</strong></td>
</tr>
<tr>
<td>In re:<br><br>    <strong>Robert Lifson</strong><br>    <strong>Toni Lee Black</strong><br><br>                                Debtor(s).</td>
<td>CASE NO.:<br>CHAPTER: <strong>13</strong><br>ADV. NO.:</td>
</tr>
</table>

## ELECTRONIC FILING DECLARATION
## (INDIVIDUAL)

### PART I - DECLARATION OF DEBTOR(S) OR OTHER PARTY

☐   Petition, statement of affairs, schedules or lists                Date Filed: _____

☐   Amendments to the petition, statement of affairs, schedules or lists    Date Filed: _____

☒   Other:  Fourth Amended Ch13 Plan                   Date Filed:  3/24/2014

I (We), the undersigned Debtor(s) or other party on whose behalf the above-referenced document is being filed (Signing Party), hereby declare under penalty of perjury that: (1) I have read and understand the above-referenced document being filed electronically (Filed Document); (2) the information provided in the Filed Document is true, correct and complete; (3) the "/s/," followed by my name, on the signature line(s) for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature line(s); (4) I have actually signed a true and correct hard copy of the Filed Document in such places and provided the executed hard copy of the Filed Document to my attorney; and (5) I have authorized my attorney to file the electronic version of the Filed Document and this *Declaration* with the United States Bankruptcy Court for the Central District of California. If the Filed Document is a petition, I further declare under penalty of perjury that I have completed and signed a *Statement of Social Security Number(s)* (Form B21) and provided the executed original to my attorney.

_____       3/24/2014
*Signature of Signing Party*                        Date
**Robert Lifson**
*Printed Name of Signing Party*

_____       3/24/2014
*Signature of Joint Debtor*                          Date
**Toni Lee Black**
*Printed Name of Joint Debtor*

### PART II - DECLARATION OF ATTORNEY FOR SIGNING PARTY

I, the undersigned Attorney for the Signing Party, hereby declare under penalty of perjury that: (1) the "/s/," followed by my name, on the signature lines for the Attorney for the Signing Party in the Filed Document serves as my signature and denotes the making of such declarations, requests, statements, verifications and certifications to the same extent and effect as my actual signature on such signature lines; (2) the Signing Party signed the *Declaration of Debtor(s) or Other Party* before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (3) I have actually signed a true and correct hard copy of the Filed Document in the locations that are indicated by "/s/," followed by my name, and have obtained the signature(s) of the Signing Party in the locations that are indicated by "/s/," followed by the Signing Party's name, on the true and correct hard copy of the Filed Document; (4) I shall maintain the executed originals of this *Declaration*, the *Declaration of Debtor(s) or Other Party*, and the Filed Document for a period of five years after the closing of the case in which they are filed; and (5) I shall make the executed originals of this *Declaration*, the *Declaration of Debtor(s) or Other Party*, and the Filed Document available for review upon request of the Court or other parties. If the Filed Document is a petition, I further declare under penalty of perjury that: (1) the Signing Party completed and signed the *Statement of Social Security Number(s)* (Form B21) before I electronically submitted the Filed Document for filing with the United States Bankruptcy Court for the Central District of California; (2) I shall maintain the executed original of the *Statement of Social Security Number(s)* (Form B21) for a period of five years after the closing of the case in which they are filed; and (3) I shall make the executed original of the *Statement of Social Security Number(s)* (Form B21) available for review upon request of the Court.

_____       3/24/2014
*Signature of Attorney for Signing Party*          Date
**Caroline Kim 249190**
*Printed Name of Attorney for Signing Party*

_____
This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*November 2006*

EXHIBIT "5"

1  Caroline Kim, SBN 249190
   Kim Law Group, P.C.
2  3711 Long Beach Blvd., Suite 710
   Long Beach, CA  90807
3  Phone number (562) 988-5988
   Fax number (562) 988-5994
4
   Attorney for Debtors
5  Robert Lifson and Toni Lee Black

6
                 UNITED STATES BANKRUPTCY COURT
7
                 CENTRAL DISTRICT OF CALIFORNIA
8
                     LOS ANGELES DIVISON
9

10  In re:                          )   Case No.: **02:13-bk-28666-VZ**
                                    )
11  Robert Lifson and Toni Lee Black )
                                    )   PROOF OF SERVICE REGARDING
12                                  )   FOURTH AMENDED CHAPTER 13 PLAN
                                    )
13                                  )
                                    )
14                                  )
                                    )
15                                  )
                                    )
16                                  )
                                    )
17                                  )
                                    )
18                                  )
                                    )
19  _____)

20                        **PROOF OF SERVICE**

21        I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not
22  a party to the within action.  My business address 3711 Long Beach Blvd., Long Beach, CA 90807.

23        On   03/24/14     I served the foregoing document described as FOURTH AMENDED
    CHAPTER 13 PLAN.
24
                        **SEE ATTACHED**
25
    [x]     To be served by court via notice of electronic filing ("NEF") - Pursuant to controlling General
26  Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via
    NEF and hyperlink to the document.  On 03/24/14, I checked the CM/ECF docket for this bankruptcy
27  case or adversary proceeding and determined that the following person(s) are on the Electronic Mail
    Notice List to receive NEF transmission at the email addressed indicated below:
28

                        EXHIBIT "5"

Chapter 13 Trustee, Nancy Curry: ecfnc@trustee13.com
US Trustee, ustpregion16.la.ecf@usdoj.gov

[x]    by placing [ ] the original [x] a true copy thereof enclosed in a sealed envelope addressed to each addressee as stated on the attached service list

Executed on at Long Beach, California

[x]    (State) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

[x]    (Federal)    I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Denise Sanchez

Type or Print Name

Signature

EXHIBIT "5"

2

1

**Service List**

2
Allied Interstate Inc.
PO BOx 361474
3
Columbus, OH 43236-1474

4
American Home Mtg Srv/Homeward Residenta
Ahmsi / Attention: Bankruptcy
5
Po Box 631730-1730
6
Irving, TX 75063

7
Animal Medical Center Of So. CA
2340 S. Sepulveda Blvd.
8
Los Angeles, CA 90064

9
Asset Acceptance
10
P.O. Box 2036
Warren, MI 48090
11

12
Board of Equalization
P.O. Box 942879
13
Sacramento, CA 94279-0056

14
Cba Collection Bureau
15
Po Box 5013
Hayward, CA 94540
16

17
Cbna
1000 Technology Dr.
18
O Fallon, MO 63368

19
Cedar-Sinai Medical Center
20
Emergency Dept. Physicians
P.O. Box 51258
21
Los Angeles, CA 90051

22
Cedar-Sinai Medical Center
23
1801 W. Olympic Blvd.
Pasadena, CA 91199-1050
24

25
Cedars-Sinai Lab Services
PO Box 60109
26
Los Angeles, CA 90060-0109

27
Cedars-Sinai Medical Group
PO Box 4313
28
Woodland Hills, CA 91365-4313

1 | CIR, Law Offices
2 | PO Box 23189
| San Diego, CA 92193-3189
3
4 | Citibank
| 8485 Wilshire Blvd.
5 | Beverly Hills, CA 90211

6 | Cmre Financial Services Inc
| 3075 E Imperial Hwy Ste 200
7 | Brea, CA 92821

8
| Designed Receivable So
9 | 1 Centerpointe Dr. Ste. 45
| La Palma, CA 90623
10

11 | Ford Motor Credit Corporation
| Ford Motor Credit
12 | Po Box 6275
| Dearborn, MI 48121
13

14 | Franchise Tax Board
| PO Box 942867
15 | Sacramento, CA 94267

16
| GE Money
17 | PO Box 960061
| Orlando, FL 32896
18

19 | Gecrb/Lowes
| Attn: Bankruptcy
20 | Po Box 103104
| Roswell, GA 30076
21

22 | Gemb/care Credit
| PO Box 981439
23 | El Paso, TX 79998

24
| Gemb/lowes
25 | PO Box 103065
| Roswell, GA 30076
26

| Genesis Financial Services
27 | Vativ Recovery Solutions, LLC
28 | PO Box 40728

EXHIBIT "5"

4

Houston, TX 77240

Gmac Mort.
3451 Hammond Ave.
PO Box 4622
Waterloo, IA 50704

IRS
PO Box 21126
Philadelphia, PA 19114

KCTTC
Payment Center
PO Box 541004
Los Angeles, CA 90054-1004

Kern County Court RD
1655 Chester Ave.
Bakersfield, CA 93301

LVNV Funding LLC
Resurgent Capital Services
P.O. Box 10587
Greenville, SC 29603

MacDowell and Associates, Ltd.
3636 Birch St., Ste. 290
Newport Beach, CA 92660

North Star Capital Acquisition
Jefferson Captial Systems, LLC
PO Box 7999
Saint Cloud, MN 56302

Phillip W. Gillet, Jr.
1705 27th Street
Bakersfield, CA 93301

Pine Mountain Family Dental
16233 Pine Valley Lane, Ste. 203
Pine Mountain Club, CA 93222

Portfolio Recovery Assoc
PO Box 41067
Norfolk, VA 23541

EXHIBIT "5"

5

Quest Diagnostics
PO Box 78874
Phoenix, AZ 85062-8874

Real Time Resolutions, Inc.
P.O. Box 35888
Dallas, TX 75235-1655

Revenue Sys
2196 Main St
Dunedin, FL 34698

SKO Brenner American
PO Box 230
Farmingdale, NY 11735

Sprint Nextel
PO Box 7949
Overland Park, KS 66207

Toyota Mtr
Toyota Financial Services
Po Box 8026
Cedar Rapids, IA 52408

Trojan Professional Se
4410 Cerritos Ave
Los Alamitos, CA 90720

United States Attorney
2500 Tulare St. Ste. 4401
Fresno, CA 93721

United States Department of Justice
Civil Trial Section, Western Region
Box 683, Ben Franklin Station
Washington, DC 20044

Van Nuys Municipal
144400 Erwin St. Mai
Van Nuys, CA 91401

Vision Financial Corp
PO Box 900
Purchase, NY 10577-0900

EXHIBIT "5"

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

30 Corporate Park, Suite 450
Irvine, CA 92606

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __10/28/2015__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Debtor's Counsel:  caroline@kimlawgrouppc.com
Chapter 13 Trustee:  ecfnc@trustee13.com
U.S. Trustee:  ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __10/28/2015__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| __10/28/2015__ | Michele Dapello | /s/ Michele Dapello |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re                                   (SHORT TITLE) | CHAPTER: 13 |
| Robert Lifson and Toni Lee Black | |
| Debtor(s). | CASE NO.: 2:13-bk-28666-VZ |

## ADDITIONAL SERVICE INFORMATION (if needed):

### SERVED BY UNITED STATES MAIL:

### DEBTOR:

Robert Lifson

164 North Carson Road

Beverly Hills, CA 90211

### DEBTOR:

Toni Lee Black

164 North Carson Road

Beverly Hills, CA 90211

### LIENHOLDER:

Real Time Resolutions, Inc.

P.O. Box 35888

Dallas, TX  75235-1655

### LIENHOLDER:

Real Time Resolutions, Inc.

1349 Empire Central Drive, Suite 150

Dallas,  TX  75247-4029

### LIENHOLDER:

Real Time Resolutions, Inc.

818 West Seventh Street, Suite 930

Los Angeles, CA  90017

Attn:  CT Corporation System (Agent for Service of Process)

### PRESIDING JUDGE (exhibits tabbed pursuant to LBR 9004-1(a)):

United States Bankruptcy Court

Chambers of Honorable Vincent P. Zurzolo

255 E. Temple Street, Suite #1360

Los Angeles, CA 90012

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                                                                      **F 4001-1.RFS.RP.MOTION**